# CHARLESTON.

## GEORGE S. WALLACE v. FRED C. PRICHARD *et al.*

### Submitted October 24, 1922. Decided November 21, 1922.

1. BROKERS—*Special Count for Commissions Sufficient if it Substantially Avers the Name of Procured Purchaser.*

   A special count for commissions alleged to have been earned by an agent or broker for procuring a purchaser for the seller of stock in a corporation, if otherwise good, is good on demurrer if it substantially avers the name of the person or corporation procured. (p. 355).

2. ASSUMPSIT, ACTION OF—*Plaintiff Does Not Waive Benefit of Common Counts by Omitting to File Bill of Particulars Therewith.*

   In such a case the plaintiff does not waive the benefit of the common counts in his declaration by omitting to file therewith a bill of particulars. (p. 355).

3. PLEADING—*Special Counts Treated as Bill of Particulars in Absence of More Formal Bill.*

   And where the special counts filed are sufficient to give the defendant notice of plaintiff's claim, they may, in the absence of a more formal bill of particulars, be treated as a bill of particulars for the purpose of the suit. (p. 355).

4. BROKERS—EVIDENCE—*In action for Commissions Under One Contract, Original Contract Superseded Thereby Held Admissible as Part of Res Gestae; Original Contract Held Admissible on Question of Consideration for New Contract*

   Though the original contract of employment be in the form of a proposal or an option to buy upon terms, but after presenting a prospective purchaser, it is supplemented by a verbal agreement to pay the broker or agent a stipulated compensation or commission in consideration of the surrender of his previous contract and his agreement that the seller be allowed to deal directly with the customer presented, the original contract may be admitted in evidence on the trial of an action for the commissions or compensation contracted for, as a part of the *res gestae* and on the question of the consideration for the new contract. (p. 356).

5.  SAME—*In action on New Contract, Whereby Broker Sur-
    rendered Original Contract After Having Presented Pur-
    chaser the New Proposal by Owner to Purchaser Was Ad-
    missible.*

    And so also is the new contract or proposal by the vendor
    made in writing with prospective purchaser so procured, prop-
    erly admissible in evidence in such action, as tending to show
    performance of his contract by plaintiff, and the terms and
    provisions of the new proposal and the acceptance thereof by
    the prospective purchaser and the final consummation of the
    contract with him.   (p. 358).

6.  SAME—*Surrender of Original Agreement Held a Sufficient Con-
    sideration for New as to Commission.*

    Though the original contract with an agent or broker be in
    the form of an option to buy the subject of the employment,
    the surrender of such option and agreement that the principal
    may deal directly with the customer, will constitute a sufficient
    consideration, though verbal, to pay the broker the commis-
    sions or compensation then agreed upon, if the subsequent
    sale and purchase of the property contracted for is finally
    consummated with the prospective purchaser agreeably to the
    terms of the contract, or as modified by the parties thereto.
    (p. 359).

7.  SAME—PLEADING—*Broker   May   Recover   Compensation Due
    Under Executed Contract Under the Common Counts; Want
    of Formal Bill of Particulars Not Fatal, if Evidence Not
    Objected to.*

    When such contract of employment has been fully executed
    on the part of a broker or agent and nothing remains to be
    done on his part, he may recover under the common counts in
    assumpsit without pleading the special contract; and in such
    case the absence of a formal bill of particulars is not fatal,
    if the evidence be not objected to, or if such pleadings filed
    be sufficient to give defendant full notice of plaintiff's claim.
    (p. 360).

8.  TRIAL—*Instructions Submitting Facts of Which There is
    Appreciable Evidence Not Objectionable As Assuming Such
    Facts as Proven.*

    An instruction to the jury on the trial of such an action,
    which does not assume but submits to the jury the findings
    of the fact on which the plaintiff relies, where there is appreci-
    able evidence introduced from which such facts may be found,
    is not amenable to the objection that such instruction assumes
    such facts as proven.   (p. 361).

9.   BROKERS—*Where Contract Bound Broker to Sell at Least Eighty Per Cent of Stock, on Sale of All is Entitled to the Same Rate of Compensation as Stipulated for the Eighty per Cent.*

Where the contract with such broker bound the seller to deliver at least eighty per cent of the stock of a corporation and bound the purchaser to take and pay for the remaining stock, if procured by the seller, the broker, if all the stock be sold, is entitled to the same rate of compensation for making the sale of the residue of the stock as is stipulated for the eighty per cent thereof.   (p. 363).

10.  SAME—*Entitled to Compensation on Consummation of Contract as Modified After Presenting Purchaser, Though Proposal to Purchaser is Thereafter Changed.*

And if the terms of the original proposal, when left in the control of the seller, be changed, such change will not affect the right of the broker or agent to his compensation, if the contract as modified be finally consummated.   (p. 363).

11.  SAME—*Stockholder's Contract with Broker for Sale of Stock Joint Unless Contract Otherwise Provides.*

When the contract of stockholders with an agent or broker to sell their stock in a corporation is joint, they are liable jointly, through their several interests in the subject matter of the agency be in different proportions, unless by the express words of the contract their liability be rendered several according to their several interests therein.   (p. 364).

12.  TRIAL—*Trial Court Not Bound to Repeat Same Proposition in Different Language.*

The trial court is not bound to repeat the same proposition of law in different instructions to the jury.   (p. 366).

Error to Circuit Court, Cabell County.

Action by George S. Wallace against Fred C. Prichard and others.   Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Marcum & Shepherd, Geo. I. Neal* and *John H. Holt,* for defendant in error.

*Fitzpatrick, Brown & Davis* and *Livezey & McNeer,* for plaintiffs in error.

MILLER, JUDGE:

In the circuit court, in an action of assumpsit, upon the common and three special counts, for commissions or compensation alleged to have been earned by plaintiff as against defendants in the sale and purchase of certain shares of stock owned and controlled by them in what was known as the Rum Creek Collieries and By-Product Company, there was a verdict and judgment in favor of plaintiff for the sum of $46,-699.00.

We are asked to reverse this judgment on the following grounds; first, because the circuit court should have sustained defendants' demurrer to the three special counts. The only proposition relied on is that there was failure to allege to whom the sale was made for which commissions are claimed by plaintiff. These special counts do in effect aver that plaintiff procured as a prospective purchaser the Elkhorn Piney Coal Mining Company, with whom the defendants entered into a contract in writing upon the same terms named in their contract with plaintiff, and which was finally consummated and carried into effect upon better terms to defendants by a sale and transfer of the stock to the prospective purchaser procured by him.

The second count is substantially the same as the first, except that it introduces the element of fraud and a fraudulent scheme on the part of the defendants and the representatives of the Elkhorn Piney Coal Mining Company, pretending a breaking off of negotiations with the representatives of such purchaser in such a way as to defraud plaintiff. The third count is substantially the same as the second. No authority is cited for the proposition stated, and little reliance on this point of error is disclosed in argument.

Under the same heading counsel, as a second ground of demurrer, urge that no account or bill of particulars being filed with the declaration, no evidence could be introduced under the common counts, citing therefor section 11, chapter 125 of the Code. This proposition, however, has no application to the demurrer to the special counts. The statute would exclude evidence on matters not specified in a bill of particu-

lars, if timely objected to. But such questions are not presented by demurrer. We have decided that a bill of particulars is no part of the declaration. *Sheppard* v. *Peabody Insurance Co.*, 21 W. Va. 368; *Riley* v. *Jarvis*, 43 W. Va. 43; and that a plaintiff does not waive the common counts by omitting to file a bill of particulars. *Federation Window Glass Company* v. *Cameron Glass Company*, 58 W. Va. 477. So we are clearly of opinion that the demurrer was properly overruled.

It is next urged for reversal that the circuit court erred in admitting in evidence the letter of defendants of December 20, 1919, the agreement therein being wholly different from the one averred in the special counts of the declaration, and that the admission thereof violated the fundamental rule that the proof must conform to the averments of the pleading. This rule of allegata and probata is not controverted by counsel for plaintiff. Undoubtedly, as decided in *Kidd* v. *Beckley*, 64 W. Va. 80, and other cases cited, the instrument proven must be of the kind and character alleged. As there decided, an instrument not under seal will not answer as proof of a writing obligatory declared on, or *vice versa.*

Omitting date and signatures, the letter or option referred to is as follows:

"George S. Wallace, Esquire.
              City
Dear Sir:
     Referring to our conversation of this date.
     The undersigned agree to sell stock in the Rum Creek Collieries & By-Product Company to the amount of 80 per cent. of the entire issue, which is a fraction under $500,000, issued at a price of $150 per share, under condition that you guarantee at the time of purchase to take up and cancel a $250,000 bond issue, of which a few thousand have been redeemed, and that you will guarantee to take the balance of the stock issued at the same price and at the same time that this deal may be consummated.
     We hereby grant you an option for a period of fifteen days in which to take advantage of the above mentioned price, and, if your examination is not com-

plete, we hereby agree to give a fifteen day extension in order to complete the same.''

The contention of counsel for defendants is that the contract pleaded in the three special counts was a brokerage contract calling for compensation in the form of commissions of ten dollars per share for each share of the stock which might be sold under the contract, while the paper introduced as evidence was simply an offer on the part of defendants, for a limited period stipulated, and upon the terms named therein, to sell the stock to the plaintiff, and was not an agency contract as alleged in the several special counts, and therefore was inadmissible to establish the contract pleaded. The legal proposition that the allegata and probata must substantially agree, is conceded. This is elementary; but plaintiff does not stop with the averments respecting the instrument of December 20, 1919. He avers that pursuant to the contract, he procured within the time limit a purchaser for the stock, who was able, ready and willing to buy the stock, but who preferred to deal directly with the owners of the property, and that upon condition that he would consent thereto and would surrender his contract, in the event the stock was taken pursuant to a new contract made on January 5, 1920, directly with the prospective purchaser, at the same or a better price, defendants would take care of him and pay him the same rate of commission he was to receive if the sale had taken place pursuant to his original contract with them, and that the purchaser so introduced by him, or one representing the same interests, did subsequently continue the negotiations and did finally purchase the stock at a larger price, and that his contract was fully consummated and complied with on his part, and that the negotiations relating thereto were but continuations of the original contract entered into with him on December 20, 1919, for the sale and purchase of said stock; wherefore he was and is entitled to the compensation or commissions contracted for originally and in the new or modified contract of January 5, 1920.

The contract of January 5, 1920, in lieu of the original contract, introduced over defendants' objection, is as follows:

"The Elkhorn Piney Coal Mining Co.,
         Huntington, W. Va.

Gentlemen: Referring to our conversation of Saturday night January 3rd, with your Mr. Fletcher and Mr. McLeod, we make you the following offer to sell you the stock of the Rum Creek Collieries & By-Product company and guarantee to deliver up to eighty (80) per cent of the issue, the total issue being four thousand six hundred and sixty-nine (4669) shares, at a price of one hundred and fifty ($150.00) Dollars a share, under consideration that you guarantee at the time of purchase to take up and cancel outstanding bonds plus accrued interest the principal amounting to two hundred and forty-two thousand dollars ($242,-000.00) and that you will further agree to take up and pay for the balance of the shares which are held by other stockholders that we have not consulted up to this date at the same time and at the same price above mentioned, we on the other hand agreeing to use our best offices in bringing in this stock upon notice from you that you accept this proposition. This offer is to hold good until February 5, 1920.

We further agree that if you elect to do so, we will grant you the privilege of making an audit of our books, and to enable you to make this audit we will extend this offer for a period of thirty days from February 5th, 1920."

The objection of defendants to this document was that it was immaterial evidence. The contract with plaintiff, the declaration alleges, was made contemporaneously with this new proposition to the prospective purchasers, namely, to pay him at the rate of ten dollars per share for all stock sold and taken by them or any allied person or company in whose name it might be purchased.

It is very manifest that if the new contract was made, and it is not denied, it is upon this and not solely upon the original proposition of December 20, 1919, that plaintiff must prevail, if he is entitled to recover as alleged. The contention of counsel for plaintiff is; (1) that the original contract or proposition was properly admissible as a part of the *res gestae,* and as showing by its surrender, as alleged, a consideration for the new contract of January 5, 1920; and (2)

because as interpreted by both plaintiff and defendants, it constituted the consideration for the second contract, and was properly pleaded and admitted in evidence in connection with plaintiff's other evidence as to what the new contract was. We observe, in the first place, that in terms it amounted to a general proposition to sell the stock, not necessarily to plaintiff, at so much per share. It was as much an offer to sell to any one he might procure as to himself as purchaser. He might avail himself of the contract personally, it is true, but was he bound to treat the offer as personal to himself? We think it might be interpreted, as both parties so treated it, as a general proposition to any body. True, there are some personal covenants, one to take up and cancel $250,000.00 of bonds, and the other guaranteeing to take all the outstanding stock of the company at the same price; but these are covenants and agreements which would bind any one to whom plaintiff's right might be transferred.

It is admitted that on January 5, 1920, the defendants Pritchard and Vest at least agreed on condition that plaintiff would surrender his contract in favor of the prospective purchaser introduced by him and with whom all the defendants entered into a new contract, they would protect him in the amount of his commissions or compensation if the new contract should be complied with by it. So it is unimportant whether the original proposition contemplated a brokerage agreement or not, plaintiff's rights to compensation did not depend on the original agreement. It was however admissible as showing the beginning of the transaction between the parties, and as bearing on the question of consideration for the new or continuing promise.

On the question of consideration the contention of defendants is that the original contract being itself without consideration, constituted no consideration for the new promise. But when surrendered it was so far executed by Wallace, that he had spent time in procuring and introducing the prospective purchaser and had actually assisted in preparing the new option contract with them. His production of the purchaser and the surrender of his contract in its favor was re-

garded by them as of some value to defendants; and all, including Switzer, took advantage of the labors and efforts of plaintiff; and if plaintiff's contention be true, that the final sale of the stock and property of the defendants was the result of his services, and all participated in the benefits thereof, all would be bound to compensate him; so that the introduction of the two contracts was not an attempt to vary by parol the terms of the prior contract, condemned by the authorities cited by defendants' counsel. The oral evidence admitted in connection with the written proposals was simply the details as to how the parties regarded the contracts and what was done by them under the same. A most potent piece of evidence in favor of plaintiff's contention as to what the contract between the parties was, is a letter written by defendants to plaintiff on March 4, 1920. In it they said:

> "Dear Sir: This is to inform you that the Elkhorn Piney Coal Mining Company, to whom we gave an option on Rum Creek Collieries & By-Products Company's stock *in which you are interested*, has been cancelled by these gentlemen who have declined to purchase the same. We are hereby notifying you that we are withdrawing the Rum Creek Collieries & By-Products Company from the market and *we are not offering commissions from now on in connection with the sale thereof.*"

Observe the important phrases underscored, "in which you are interested," and "we are not offering commissions from now on to any one in connection with the sale thereof." In as much as plaintiff does not rely on the contract of December 20, 1919, but upon the new or oral agreement of January 5, 1920, the parol evidence rule which forbids the introduction of evidence of prior or contemporaneous oral negotiations to vary or contradict the terms of a written contract, has no application where it is sought to prove by parol evidence a new contract made after the original contract was entered into. 4 Page on Contracts, (2nd ed.), § 2484; *Campbell* v. *Beard,* 57 W. Va. 501.

Moreover, in the case at bar the contracts specially pleaded

were executed contracts. Nothing remained to be done by plaintiff under them, and he might rely on the common count in assumpsit for the compensation agreed upon, unless for want of a formal bill of particulars the evidence was inadmissible. *Lord & McCracken* v. *Henderson,* 65 W. Va. 321, and cases cited; *Chambers* v. *Simmons,* 76 W. Va. 174, 184. No formal bill of particulars was filed in this case, but the special counts fully advised defendants of plaintiff's claim; and the objection to the introduction of the contracts and to the oral evidence relating to compensation, was not predicated on the want of a bill of particulars. *Federation Window Glass Co.* v. *Cameron Glass Co., supra.* The object of a bill of particulars is simply to give the opposing party more definite information of the character of the claim or defense than is generally disclosed by the declaration, notice or plea. See Sup. Enc. Dig. Va. & W. Va. Rep. 681, title ''Office of the Bill of Particulars.'' If the declaration in itself constitutes a sufficient bill of particulars, the object thereof is fully satisfied, unless more definite information be demanded by the opposite party.

The next error complained of is the giving of plaintiff's instruction number one. Some eight specific criticisms of this instruction are offered. The first, second, third and fourth are that it assumes certain hypotheses not justified by the evidence; the first that the letter of December 20, 1919, constituted an option importing a valuable consideration from plaintiff to defendants, and that the surrender of that option constituted a consideration valuable in law for the alleged promise of defendants to pay plaintiff ten dollars per share on all stock sold or which afterwards became the property of The Steel and Tube Company of America, while the uncontradicted evidence showed that there was no such consideration for such letter, and that in effect it was nothing more than an offer to sell plaintiff the stock therein mentioned on the terms stipulated; the second, that under the terms of this letter plaintiff was to receive a commission of ten dollars per share on the stock sold, of which there was no proof; the third that plaintiff produced a purchaser, while the evidence showed

that some time before December 20, 1919, the interests with which the plaintiff was affiliated had instructed their representative to obtain information regarding the property of the defendants; the fourth, that there was no breaking off of negotiations between the defendants and the Elkhorn Piney Coal Mining Company, begun under the provisions of the letter of January 5, 1920, while in fact the evidence was that said company had in absolute good faith declined to purchase under the terms of the offer contained in that letter. In our opinion the answer of plaintiff's counsel to these propositions is quite complete, namely, that the instruction assumes nothing, but submits to the jury the questions of fact, founded on sufficient evidence to justify the same. As to the first, both parties, on the trial and in their briefs filed, have frequently referred to the letter of December 20, 1919, as an option, not that it originally purported a consideration. That it was an offer which was acted on and was so far executed as to give the plaintiff an interest in the subject matter of the later contract or offer of January 5, 1920, both sides admit. According to the plaintiff's contention and the evidence of himself and the defendants, relied on, he had provided a purchaser and turned it over to defendants, with a surrender of his original option or offer, and with whom they dealt directly on the same terms, with the distinct understanding that in consideration thereof they would pay him ten dollars per share for all stock purchased. And it is shown that the new contract, as well as the old, provided that the purchaser would take, not only the eighty per cent of the stock then owned and controlled by defendants, but the remaining amount outstanding, which they agreed to endeavor to secure for the optionees. And that plaintiff had such interest and right in the new contract as he claims, was not only admitted by Prichard, the principal defendant, professing to act for all, but is fully shown in the letter of all defendants, of March 4, 1920. Whether the services of plaintiff in this behalf and the surrender of his rights were of prime importance, is not controlling, for the fact remains, that the defendants being fully advised, recognized them as valuable by

promising to pay plaintiff therefor at the rate of ten dollars per share for all the stock disposed of or that might be taken pursuant to the contract, and this right continued to be recognized down to March 4, 1920.

As to the fourth criticism, namely, that there was no evidence justifying the submission to the jury of the theory that there was no breaking off of negotiations for the purchase of the property after January 5, 1920, we think there was ample evidence to justify that theory; and manifestly the jury by their verdict concluded that there was no real cessation, and that the sale of stock or of the property represented thereby, consummated through Mr. Livezey, defendants' counsel, was the result of plaintiff's services, justifying the verdict in his favor.

The fifth objection to this instruction is that it justified the finding in favor of plaintiff regardless of the fact that the terms of the original offer or option were cash, whereas the proof showed that the terms of the sale consummated on April 2, 1920, were less than one-fourth cash, and the balance in deferred payments, and gave the jury license to award plaintiff ten dollars per share for all the stock, while the contracts of December 20th and January 5th bound defendants to deliver only eighty per cent of the stock. We see no merit in this contention. These contracts bound the purchaser to take all the stock, if procurable, and by the proposition of January 5th, the defendants bound themselves to use their best efforts to bring in all of the stock, and through their efforts it was brought in and disposed of through a dissolution of the corporation and a sale of the property direct to the purchaser. So that, if entitled to his compensation at all, plaintiff was as much entitled to claim it on all as on the eighty per cent specifically called for. The fact that the parties may have changed the terms of the contract for their mutual benefit, a matter left wholly within their control, could not work the undoing of the plaintiff in his right to compensation. *Ice* v. *Maxwell,* 61 W. Va. 9; *McDermott* v. *Fairmont Gas & Light Co.,* 88 W. Va. 692, 703; *Cooper* v. *Upton,* 60 W. Va. 648; *Id.* 65 W. Va. 401.

What we have just said in reply to the criticisms respecting want of consideration for the promise of January 5, 1920, and the alleged variance between the terms of the original contract and the one finally consummated, applies to the sixth and seventh criticisms of instruction number one.

The eighth objection urged to this instruction is that it assumes that the defendant Switzer was bound by the alleged agreement of January 5th to pay plaintiff the commissions agreed to by Prichard and Vest, when he was not present nor afterwards agreed to be bound thereby. The contract or option made by his codefendants in his behalf was signed in his behalf by Prichard. He accepted whatever benefits accrued to him thereunder, knowing of plaintiff's claim. He says of this option contract of January 5, 1920, and the signing thereof by Prichard in his behalf, that though not present, it was all right with him. On reargument counsel representing him urged that it would be unfair and illegal to hold Switzer jointly with his codefendants on a contract to pay Wallace such a large amount of commissions, when his interest in the stock and property of his company was comparatively so small. But did not all the defendants enter into a joint undertaking to sell and deliver at least eighty per cent of all the stock, and if possible all of it, and did they not bind the prospective purchaser to take and pay for the entire issue if presented? This being so, as the option contract of January 5, 1920, clearly provides or imports, the entire purchase money would be bound for the entire amount of expenses of sale, including commissions, and the owners would share in the residue of the purchase money in proportion to their stock holdings. How then could Switzer be prejudiced? Of course there is a joint judgment against him; but the assumption that his joint defendants might become insolvent and he suffer the penalty of having to pay the entire amount of the recovery, is very far fetched in this case. The law seems to be that where a contract is joint, though the promisors have different interests in the subject matter of the contract, their liability is joint, and they may be sued jointly by the promisee. 4 Page on Contracts, (2nd ed.), § 2067, citing

*Walter* v. *Rafalsky,* 186 N. Y. 543, affirming the same case in
the opinion of the lower court, 113 App. Div. Sup. Ct. 223; 1
Williston on Contracts, § 322; *City of Philadelphia* v. *Reeves,*
48 Pa. St. 472. In the case last cited, the court says: "The
subject matter of the contract, and the interests of the parties
assuming a liability, have nothing to do with the question."
See also, *Alpaugh* v. *Wood,* 53 N. J. L. 638. According to
the New Jersey case, in order to create a severable liability in
such cases there must be words of severance contained in the
contract. And in our own case of *Elliott* v. *Bell,* 37 W. Va.
834, it is held: "Where an obligation is undertaken by two
or more, it is presumably a joint liability, unless there be ex-
press words to render it joint and several."

Another error assigned and urged in argument is that the
court rejected defendants' instructions numbers one, three,
four and six. Number one was a peremptory instruction to
find for defendants. This instruction was predicated on the
defendants' theory already discussed, and we make the same
answer.

Instruction number three would have made the right of
the plaintiff to recover at the rate of ten dollars per share of
the stock disposed of to depend solely on the question whether
the supposed failure of the Elkhorn Piney Coal Mining Com-
pany to take the stock upon the terms and within the time
limited by the contract was due to some misconduct or inter-
ference on the part of the defendants, not including their sup-
posed refusal to change or vary the terms of payment set
forth in said option. This instruction and number four, re-
fused, were covered by instructions numbers seven and nine,
which were given to the jury. They are as follows:

> No. 7. "The court further instructs the jury that
> although by the extension of February 5th, 1920, the
> time limit of the option of January 5th, 1920, from the
> defendants Prichard, Vest and Switzer, to Elkhorn
> Piney Coal Mining Company, was extended to the 6th
> day of March, 1920, yet if the jury further believed
> that said Elkhorn Piney Coal Mining Company, on
> the 2nd day of March, 1920, elected not to exercise

such option and notified the defendants of such election, then such option expired on said 2nd day of March, 1920.''

No. 9. ''The court further instructs the jury that if they believe from the evidence in this case that on or about January 5, 1920, the defendants Prichard, Vest & Switzer, agreed with the plaintiff, Wallace, that if Elkhorn Piney Coal Mining Company exercised an option from the said defendants, Prichard, Vest & Switzer, of date January 5, 1920, within the time, at the price and upon the terms in such option set forth, the defendants would pay to the plaintiff $10.00 per share upon each share of stock included within said option, then the plaintiff was not entitled to any compensation unless the said option was exercised by the said Elkhorn Piney Coal Mining Company within the life of said option and according to its terms, unless such failure to exercise such option within the term thereof was prevented by the misconduct or interference of the defendants, or one or more of them. And the Jury is further instructed that the failure of the defendants to change or modify the price, terms of payment, or other conditions of such option would not constitute such misconduct or interference.''

The point urged on behalf of defendants, more strongly than any other perhaps, is that the stock was not purchased either under the contract of December 20th or under that of January 5th; that the optionees under the latter contract declined to take the property upon the terms and within the time stipulated in that contract, without any interference by the defendants with the negotiations had pursuant thereto. The contention of the plaintiff is that there was no actual cessation of negotiations. That there was some semblance of a breaking off of the original negotiations, there can be no doubt; but there is much evidence tending to show that this was feigned, and not real. Pertaining to this question defendants' letter of March 4, 1920, is quite significant and much relied on by plaintiff. This is the letter which seems to have first aroused the suspicion of plaintiff that he was not being fairly dealt with. In it the defendants took the

pains to advise the plaintiff that they had withdrawn their property from the market, and that from that time they were not offering commissions to any one in connection with the sale thereof. They also chose to inform him that the option to the Elkhorn Piney Coal Mining Company had been cancelled. The prior letter of the optionee showed that the prospective purchaser had not lost interest in the property, and but four days later the parties again met, ostensibly to consider the proposition of a sale and purchase of the output of the mines, but almost at once resumed consideration of a sale and purchase of the capital stock or the corpus of defendants' coal mines and equipment, resulting in a sale of the stock and property through defendants' attorney, to the same identical interests represented by the original optionee in the contract of January 5, 1920. There is much evidence in the case from which the jury were justified in concluding, as they must have done, that plaintiff's services resulted in the sale finally made, and that he had earned the compensation contracted for. At all events the respective theories of the parties were fairly submitted to the jury by the instructions given, and we can not say that the findings of the jury were without justification in the evidence.

The grounds of defendants' motion to set aside the verdict and grant them a new trial are the same as those already considered and disposed of in response to the other errors assigned, and must be answered in the same way, and by the same arguments, of course.

Wherefore, we are of opinion to affirm the judgment.

*Affirmed.*