GILL, JR., A MINOR, APPELLEE, *v.* ARTHUR, APPELLANT.

(No. 129—Decided June 2, 1941.)

*Mr. E. E. Eubanks* and *Mr. M. D. Slavens,* for appellee.

*Mr. W. J. Jones,* for appellant.

McCurdy, J. This action for damages for personal injuries was instituted in the Court of Common Pleas of Jackson county by Fred Gill, Jr., by his next friend, Fred Gill, Sr., where, upon trial, a verdict was rendered in favor of the plaintiff and judgment entered thereon. Following the overruling of a motion for new trial, an appeal on questions of law was perfected in this court. The assignment of errors urged by the defendant, appellant herein, are ten in number, the most important of which are predicated upon one principal question of law to which attention will hereafter be directed. There is also the claim that the verdict and judgment are against the manifest weight of the evidence.

Little difficulty arises relative to the facts in the case. Fred Gill, Jr., became twenty-one years of age on January 24, 1939. About nine months prior thereto, on the 2nd day of May 1938, at about seven o'clock in the evening, in the city of Wellston, there congregated together a group of young men who agreed among themselves to purchase a keg of beer and to take it outside the city of Jackson to a place called Dew Drop Inn and drink it. Most of the young men contributed to the fund necessary for the purchase, including the plaintiff and the defendant, and the defendant proceeded to furnish the transportation to the place of drinking near Jackson by means of a Chevrolet coupe, 1938 model, owned and driven by him. There were seven persons in the group, all of whom made the trip in the automobile at the same time, four, including the driver, riding in the seat of the coupe, and three riding in the rear end of the coupe in a compartment sometimes called the boot which afforded a place for tools and a spare tire. Upon arrival at the place called Dew Drop Inn, in the vicinity of Jackson, the seven young men proceeded to drink and dance until the contents of the keg were exhausted,

which covered a period of two to two and one-half
hours. Following this the seven again entered the
coupe for the purpose of returning to Wellston, the de-
fendant driver and three others occupying the seat and
three occupying the rear compartment, one of whom
was the plaintiff. This return trip was made at a speed
claimed by the plaintiff to have been between sixty-five
and seventy miles an hour. When the driver reached
the hill going into the village of Coalton, between
Jackson and Wellston, he swerved the car back and
forth across the road. At Coalton the driver stopped
his car at a railroad track which crossed the highway
and, which at the time, was occupied by a train. The
plaintiff and others got out of the car during this stop,
at which time one of the young men named Mahle, in
the presence and hearing of all, remonstrated with the
defendant driver about his driving and threatened to
whip him upon the return to Wellston if he did not
slow down, whereupon the driver replied ''Hell, you
haven't saw anything yet.'' After this the entire party
reentered the car in the same positions they had
previously occupied and after proceeding between a
quarter and a half mile toward Wellston at about the
same rate of speed as the car was travelling before
the stop at the railroad tracks, and at about 11:30 p.
m., the driver swerved the car to one side, and went
off the hard surface and onto the berm. In attempting
to pull back to the road he swerved to the other side
and the rear end of the car struck a concrete culvert,
at which time the plaintiff suffered his injuries com-
plained of. The plaintiff admitted that he was wor-
ried about the manner in which the car was being
driven prior to the stop at Coalton, that he realized
the danger, that he knew the driver of the car was in-
toxicated and that he reentered the car with this
knowledge, giving as his reasons that he thought the
driver would slow down and that he had to work the

next day and did not want to get out at Coalton, a place a few miles short of Wellston, his destination. Practically all of plaintiff's testimony is corroborated with a variance on the rate of speed that the car was travelling, other witnesses having placed it as low as forty-five miles per hour.

The defendant himself denied that he was intoxicated, claimed that he was not driving more than fifty miles an hour going into Coalton and forty-five miles an hour after leaving Coalton and thirty miles an hour at the time of driving into the concrete culvert. He denied that he was trying to scare anybody and claimed that he did all within his power to avert the accident. He further testified that he did not remember Mr. Mahle taking him to task about his driving and he denied making the statement, "Hell, you haven't saw anything yet." He admitted that he was crowded in the seat of the car and did not have free use of his arms and legs. He claimed the car was overloaded and this caused the car to sway or swerve.

A special interrogatory was furnished to the jury containing two written questions as follows:

"Do you find from the evidence that the plaintiff in this case was a guest passenger of the defendant?

"Do you find from the evidence that the defendant Cecil Arthur was guilty of wanton misconduct?"

The answer to each of these questions by the jury was "yes."

Defendant's written requests for special instructions to the jury before argument, numbers one and three, are predicated on the proposition that the evidence gives rise to a question as to whether the plaintiff was a guest or a party to a joint enterprise. They both relate to joint enterprise. The trial court properly refused these instructions. There is no question under the facts of the case as to the plaintiff's status. He was a guest. There seems to be some confusion in rela-

tion to the subject of joint enterprise as it is urged in this case. It is well established in Ohio that the real test is whether the plaintiff had any authority to control or did control the operation of the automobile. The question is not whether the drinking adventure was joint but is whether there was a joint enterprise in the operation of the automobile. *Bloom* v. *Leech, Admr.,* 120 Ohio St., 239, 166 N. E., 137; *Cambridge Home Telephone Co.* v. *Harrington,* 127 Ohio St., 1, 186 N. E., 611; *Morrow* v. *Hume, Admx.,* 131 Ohio St., 319, 3 N. E. (2d), 39. There is no evidence whatever that the plaintiff Gill had any authority to control or did control the operation of the automobile. On the contrary the evidence is clear that the defendant Arthur, the owner and driver of the automobile, afforded transportation to a point near Jackson and return. Counsel for the defendant properly state it in his brief in this language:

"* * * and requested the defendant to drive them to a beer parlor some twelve miles from Wellston near Jackson, Ohio, to which proposition the defendant agreed."

The relationship between plaintiff and defendant is that of guest, without payment, and owner-operator of a motor vehicle. Section 6308-6, General Code, fixes the legal duty that the defendant owed to the plaintiff and is controlling in this case. This section of law, commonly known as the Guest Statute, provides as follows:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator,

owner or person responsible for the operation of said motor vehicle.''

The trial court in its charge properly limited the duty of the defendant driver to the plaintiff guest to wilful and wanton misconduct. These terms were correctly defined by the trial court. The request by counsel for the defendant after the general charge of the court to further charge on wanton misconduct was properly refused. At the time the request was made the court had already correctly charged on the subject as it applied to the issues raised by the evidence.

We do not deem it necessary to discuss at length the assignment of error that the verdict is against the manifest weight of the evidence. Under the facts of the case, which we have heretofore recited, it can readily be seen that the jury had before it testimony that the defendant driver at the time of the accident and just prior thereto, while under the influence of alcohol, was driving his automobile at a high rate of speed, over-crowded, and dangerously so, with seven persons, and swerved his car from side to side, and stated, after being remonstrated with about his driving, ''Hell, you haven't saw anything yet.'' It was the province of the jury to determine whether this testimony was worthy of belief and represented the facts in the case. It is evident that the jury accepted it as such and in so doing it was fully warranted in finding that the misconduct of the defendant driver was wanton. The trial court properly overruled defendant's motions for a directed verdict.

The trial court properly refused defendant's special instructions two and four. Number two is not applicable and number four does not properly state the law.

All remaining assignments of error give rise to the one important legal question. Under the provisions of Section 6308-6, General Code, fixing the liability of

the driver, does the guest have any duty imposed upon him relative to his conduct or care for his own safety? The trial court in the instant case in its general charge gave no instruction whatever relative to the plaintiff's duty.

In the case of *Thomas* v. *Foody,* 54 Ohio App., 423, 7 N. E. (2d), 820, it was held that contributory negligence is no defense against wanton misconduct, and in the case of *Kirk* v. *Birkenbach,* 22 Ohio Law Abs., 569, it was likewise held that contributory negligence is no defense against wanton misconduct but that wilful misconduct of the plaintiff if a contributing proximate cause of an injury may be. We find no specific discussion of the subject in these decisions and the Supreme Court has made no pronouncement.

The intent of the Legislature in its enactment of Section 6308-6, General Code, was clearly to limit the liability of defendant drivers to non-paying guests to wanton or wilful misconduct and abrogate the common law of negligence relative thereto. *Vecchio* v. *Vecchio,* 131 Ohio St., 59, 1 N. E. (2d), 624. The Legislature was silent on the subject of the duty of the guest, thereby leaving the general rules of law applicable and controlling. This state has long recognized the general rule "that contributory negligence constitutes no defense where it appears that the defendant acted wilfully, wantonly, or recklessly." 29 Ohio Jurisprudence, 525, Section 86. See, also, *Krause* v. *Morgan,* 53 Ohio St., 26, 40 N. E., 886; *Payne, Dir.,* v. *Vance,* 103 Ohio St., 59, 133 N. E., 85; 5 American Jurisprudence, 742, Section 414. Under this rule it would seem that a guest is relieved of the use of ordinary care for his own safety. However, such a generalization is directly affected by two other well established rules. The first was pronounced in this state in the case of *Hall* v. *Meister,* 42 Ohio App., 425, 182 N. E., 350, as follows: "Wilful or wanton conduct on the part of the injured

person prevents recovery in an action based on the wilful or wanton conduct of the defendant." This statement was made on authority of *Spillers* v. *Griffin,* 109 S. C., 78, 95 S. E., 133, L. R. A. 1918D, 1195. This rule is further annotated in 41 A. L. R., 1379, and is predicated on the proposition of law as set forth in *Spillers* v. *Griffin, supra,* that "when two people are equally at fault in producing the injury, the law leaves them where it finds them." Under this rule a guest must be free from wilful or wanton misconduct on his part as indicated in the *Birkenbach case, supra.* The second rule, generally recognized and firmly established in this state, is "that one who exposes himself to an obvious and appreciated danger, even though he should not appreciate the full extent of the danger, assumes the risk of injury that may result to him therefrom." 29 Ohio Jurisprudence, 536, Section 91. While this doctrine of assumption of risk is chiefly applicable to master and servant cases it has become applicable to negligence cases generally. Although often used in the sense of contributory negligence and confused therewith, strictly and properly this doctrine is not contributory negligence. They are distinct and different defenses. 29 Ohio Jurisprudence, 536, Section 91. In many states this rule has been specifically applied to automobile personal injury cases wherein the plaintiff's claim is based on the wilful or wanton misconduct of the defendant driver. It is particularly well enunciated in Wisconsin in the cases of *Krueger* v. *Krueger,* 197 Wis., 588, 222 N. W., 784; *Sommerfield, Admr.,* v *Flury,* 198 Wis., 163, 223 N. W., 408; *Page* v. *Page, Gdn.,* 199 Wis., 641, 227 N. W., 233; *Brockhaus* v. *Neuman,* 201 Wis., 57, 228 N. W., 477; and *Knipfer* v. *Shaw,* 210 Wis., 617, 246 N. W., 328.

Prior to the enactment of the Guest Statute the Supreme Court of Ohio indicated at page 569 of the case of *Ward* v. *Barringer,* 123 Ohio St., 565, 176 N. E., 217,

that the doctrine might be applicable under the proper factual situation. An examination of the *Knipfer case* and the *Ward case* clearly discloses that in event they had both been predicated on the defendant's wilful or wanton misconduct in driving at night during a fog when there was no visibility, which unquestionably created the danger and was the basic cause of each accident, the plaintiff being fully aware of the danger and having acquiesced in the driver's conduct assumed the risk. Under the doctrine of assumption of risk the guest suffering an injury because of the wilful or wanton misconduct of the host driver can not recover if he exposed himself to an obvious and appreciated danger.

Proper analysis forces a distinction between these two rules (wilful and wanton misconduct of plaintiff and assumption of risk) even though the application of either may lead to the same result or conclusion. In adopting the equal culpability theory in the *Hall* and *Birkenbach cases, supra,* and in some states such as California as pronounced in the case of *Schneider* v. *Brecht,* 6 Cal. App. (2d), 379, 44 P. (2d), 662, there is complete failure to consider the applicability of the assumption of risk doctrine and the necessary and patent distinction between the two rules. The first rule grows out of the field of comparative negligence and equal culpability as it has been developed in the general law of negligence and looks to independent acts of both plaintiff and defendant which in themselves join in creating the danger and setting in motion the causes from which the accident and injury result. Incidentally, the comparative negligence doctrine for most purposes is now generally repudiated. 29 Ohio Jurisprudence, 538, Section 92. Assumption of risk, the second rule, is predicated on the factual situation of the defendant's acts alone creating the

danger and causing the accident with the plaintiff's acts being that of exposing himself to such obvious danger with appreciation thereof which results in the injury. 62 Corpus Juris, 1101, 1102. It should be patent that the doctrine of assumption of risk exactly applies and alone is pertinent to the factual situation in the instant case.

In the instant case the trip was begun as a joint enterprise of drinking, not driving, in a spirit of recklessness on the part of all, with all contributing in overloading the coupe, crowding the driver, and securing the beer. The guest may not have actually foreseen the mental effect of the drinking on the driver for the return trip but during the return trip the plaintiff guest observed the effect, appreciated the obvious danger and was afforded the opportunity to leave the car and did so but reentered it with full knowledge. We are convinced that the issue here requires the application of the doctrine of assumption of risk and not the application of the rule of comparative misconduct.

The plaintiff guest, after admitting all elements necessary to constitute him guilty of assumption of risk, claimed that he reentered the coupe because he thought the defendant would do better and change his way of driving. The question became one for submission to the jury. The trial court's failure to give the jury proper instructions in relation thereto is prejudicial error.

*Judgment reversed.*

Gillen, P. J., and Metcalf, J., concur.