JESS CHESTER DAVIS

*v.*

FIRE CREEK FUEL COMPANY, *et al.*

(No. 11004)

AND

JESS CHESTER DAVIS

*v.*

FIRE CREEK FUEL COMPANY, *et al.*

(No. 11015)

Submitted April 28, 1959.          Decided June 9, 1959.

538

*John S. Haight, Arch J. Alexander, Jr.,* for Jess Chester Davis.

*Mahan, White, Higgins & Graney,* for Fire Creek Fuel Co. and others.

*Scherer, Bowers & File, W. H. File, Jr.,* for F. & L. Coal Co., Inc.

BERRY, JUDGE:

These are companion cases and will be considered together. The plaintiff below, Jess Chester Davis, instituted this action of trespass on the case in the Circuit Court of Fayette County, West Virginia, against the Fire Creek Fuel Company, a corporation, Alaska Coal Company, a corporation, Maryland New River Coal Company, a corporation, F. &. L. Coal Company, Incorporated, a Corporation, New River Fuel Company, Incorporated, a Corporation, Maryland Coal & Coke Company, a corporation and Robert L. Lewis. It was dismissed as to the Maryland New River Coal Company, a Corporation, Maryland Coal & Coke Company, a corporation and New River Fuel Company, Incorporated, a Corporation, on motion by counsel for these defendants, which motion was not resisted by the plaintiff. The case proceeded to trial against the other defendants. At the conclusion of plaintiff's evidence, the trial court, upon motion of counsel for the F. & L. Coal Company, directed the jury to return a verdict in its favor, leaving only the Fire Creek Fuel Company, a Corporation, Alaska Coal Company, a Corporation and Robert L. Lewis as defendants. At the completion of the trial the jury returned a verdict in favor of the plaintiff, against the three remaining defendants in the amount of $20,000.00. The trial

court set aside the verdict of the jury and granted to them a new trial on the ground that it was error to give plaintiff's instruction number 3, over the objection of defendants, for the reason that it was a binding instruction and did not negative contributory negligence. The first writ of error was granted to the plaintiff, Jess Chester Davis, upon application to this Court. The second writ of error was granted later by this Court upon application of the Fire Creek Fuel Company, a Corporation, Alaska Coal Company, a Corporation and Robert L. Lewis, for the alleged error on the part of the trial court in dismissing the F. & L. Coal Company as a party defendant.

The plaintiff, Jess Chester Davis, was injured on May 11, 1955, while helping to load a spool of copper wire weighing between one and three tons. The wire was owned by the defendant, Alaska Coal Company, a Corporation. Robert L. Lewis was the superintendent in charge of mining operations of the defendants, Fire Creek Fuel Company and Alaska Coal Company at the time of the accident. The wire in question was located in the supply house of the Fire Creek Fuel Company. The plaintiff, Davis, had a written contract with the Fire Creek Fuel Company to mine certain coal on its property, which made him an independent contractor. He lived over 600 feet from the supply house which was diagonally across the road from his house and the mine where he worked was about 1000 feet away, directly across the road from his house. On the day of the accident he noticed the defendant Lewis at the supply house and went down to see him, a journey requiring going a few hundred feet to the side of the direct route to the mine. He stated that he had some business to transact with Lewis but that he had forgotten what it was. He said, however, that when he talked with the defendant Lewis, that Lewis told him, "Don't run off; I want you to help us load a spool of wire." Lewis denies that he requested Davis to help load the wire. The F. & L. Coal Company's truck had been backed up to the entrance of the supply house by Mr. Bob Fleshman, a partner in the F. & L. Coal Company. The spool of wire was loaded onto this

truck, and that is the only connection the F. & L. Coal Company had with this entire transaction.

Two planks, about 12 to 16 feet in length, 12 inches in width and 2 inches thick were used as a ramp in attempting to load the spool of wire. These planks were placed on the bumper of the truck and rested on the concrete floor. The plaintiff helped place the plank on the left side of the truck. This plank had a flaw or knot in it, a fact of which both the defendant Lewis and the plaintiff were aware. Neither of the planks was "scotched" or held firm at the end resting on the concrete floor. Between the bed of the truck and the bumper where the other end of the plank rested was about a two or three inch space over which the spool of wire would have to be rocked in order to place it on the truck. A bucket of bolts having a contacting surface of about 9 or 10 inches was placed under the plank on the right. A mining jack was placed under the plank on the left by the plaintiff, Davis, this jack having only a contacting surface of about 2 or 2½ inches square. The plaintiff was located by the left plank in helping to load the spool of wire. He stated that they discussed the knot in the plank on the right and that they "were scared of it, a little afraid of it" and that was the reason for placing the jack under it. The plaintiff stated that the door was blocked by the truck and that Robert Lewis was behind him at the time the spool of wire was being rolled upon the improvised ramp. The plaintiff says that the spool of wire was loaded under the direction and orders of Robert Lewis. The defendants' witnesses stated that plaintiff was warned about the dangerous condition of the plank and jack on his side, and his reply was, "Oh, hell, let's load the damn wire." There were seven men attempting to load the spool of wire by rolling it up the ramp. When the spool of wire was at the top of the ramp, the plaintiff said he noticed that it eased back, that he told them it was going to kick the board back and that the board did come off the truck and the spool of wire turned over on top of plaintiff, seriously injuring him. After the plain-

tiff was taken to the hospital the remaining six men loaded the spool of wire onto the truck.

The status of the plaintiff at the time of the accident is rather confusing, being made so by the various pleadings and contentions of the parties at different times in this proceeding. The declaration is based on the theory that the plaintiff was an employee of the defendants at the time he was injured, because he was asked or requested to help load the spool of wire and that the defendants owed the plaintiff the duty of providing him with a safe place to work, and to provide him with suitable and safe appliances and tools with which to work. It also alleged that he was an independent contractor with the defendant, Fire Creek Fuel Company, and was on the property for that purpose on the day of the accident. No other facts were alleged to take the case without the terms of the Workmen's Compensation Act of this state. Since there was no demurrer to the declaration, we shall therefore treat it as having alleged sufficient facts in connection with this matter. See *Gunnoe* v. *Coal Co.,* 93 W. Va. 636, 117 S. E. 484; *Ferguson* v. *Pinson,* 131 W. Va. 691, 50 S. E. 2d 476. However, a claim for compensation was filed by the plaintiff as an employee of the Alaska Coal Company, a Corporation. The claim was held compensable and the plaintiff was paid about $1000.00 by the State Compensation Commissioner for the injuries he received. The defendants, Alaska Coal Company, a Corporation, and Robert L. Lewis filed a special plea in bar setting this matter up as a defense, under provisions of Code 23-2-6, which provides that an employer who elects to pay into the compensation fund in this state shall not be liable to respond in damages at common law. The plaintiff filed a replication to the plea stating that he was not an employee of the Alaska Coal Company. Apparently, defendants, Alaska Coal Company and Robert L. Lewis abandoned or waived this special plea because the record indicates that before the case was submitted to the jury, all that they requested in connection with this matter was to be allowed the benefit of the payments received by the plaintiff from

the Workmen's Compensation Fund. Although the record is not clear, it is implied that the plaintiff was not paid any compensation for helping to load the wire. This would be necessary in order to constitute the relationship of employer and employee within the meaning of the Workmen's Compensation Act of this State. *Basham* v. *County Court,* 114 W. Va. 376, 171 S. E. 893. It is not clear, but it would appear from statements made by counsel for the parties as contained in the record, that the State Compensation Commissioner was going to endeavor to have the plaintiff Davis refund the money paid to him for the injuries received because it was not a compensable injury under the Act, thus making such payment illegal. This action could have been taken on the ground that the plaintiff was a mere volunteer in connection with the loading of the wire and was not an employee, or that there was no compensation paid the plaintiff for such work. However, should the facts in this case be held sufficient to constitute employment without compensation for this specific job, then, in that event, the defendant would not be deprived of the common law defenses of assumption of risk, fellow-servant rule and contributory negligence.

Although the plaintiff had a contract with the defendant, Fire Creek Fuel Company, which made him an independent contractor, he certainly was not acting under the provisions of that contract as an independent contractor with reference to his actions of loading the wire at the time of the accident. However, by virtue of the independent contract which he had with the Fire Creek Fuel Company, he would have the right to consult its superintendent with regard to the work under the contract, which he stated is the reason he came upon defendants' property and at which time he says he was requested to help load the spool of wire. Even if the plaintiff was not requested to help load the wire, he assisted in such work with the knowledge and consent of the defendant Lewis. Therefore, under these facts, he would be considered an invitee of the defendants and

they would owe him the duty of ordinary care to prevent injury to him. 13 Michie's Jurisprudence, Negligence, §18; *Smith* v. *Sunday Creek Co.*, 74 W. Va. 606, 82 S. E. 608. Whether the plaintiff was an employee of the defendants at the time of the injury is questionable, to say the least. The mere request, if made by Lewis of the plaintiff, to help load the spool of wire, would not in itself be sufficient to constitute employer and employee relationship. 12 Michie's Jurisprudence, Master and Servant, §5; *Taylor* v. *Baltimore & O. R. Co.*, 108 Va. 817, 62 S. E. 798; *Reaves* v. *Catawba Mfg. & Electric Power Co.*, (N.C.) 174 S. E. 413. There are several elements to be considered in ascertaining whether or not the relationship of master and servant exists in this case. The request or engagement of the servant is only one of the elements to be considered. Other elements of equal importance are compensation and the power to discharge. However, the most important element in determining the relationship of master and servant is the right or power to control the actions of an individual in the manner in which he conducts his work. *Craft* v. *Pocahontas Corp.*, 118 W. Va. 380, 190 S. E. 687; *Malcolm* v. *Service Co.*, 118 W. Va. 637, 191 S. E. 527; *Brewer* v. *Constructors*, 138 W. Va. 437, 76 S. E. 2d 916.

This matter is discussed in 12 Michie's Jurisprudence, Master and Servant, §3, in the following language: "In determining whether the relationship of master and servant exists there are four elements which are considered: (1) Selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action. Where all of these elements co-exist in one person alone, that person is without doubt the master of the person engaged. But the first three of these elements are not essential to the relationship. The power of control is the most significant element." It is further discussed in 12 Michie's Jurisprudence, Master and Servant, §4, as follows: "It has been said that the right to control appears to be the conclusive test by which to determine whether the

relation exists." *Craft* v. *Pocahontas Corp., supra; Malcolm* v. *Service Co., supra;* 56 C. J. S., Master and Servant, §2. "The relationship of master and servant or employer and employee is a contractual relationship. As between the parties themselves, at least, there must be something to indicate on the part of the supposed master or employer that the supposed servant or employee is to act for him subject to his control, and such supposed employee or servant must act or agree to act in the other's behalf." 35 Am. Jur., Master and Servant, §8. See also 56 C.J. S., Master and Servant, §1.

Although the record does not definitely show there was no compensation paid the plaintiff for helping to load the wire, it is apparently assumed from the briefs and instructions that he was not paid any compensation. This should have been clearly presented to the jury by positive evidence.

Instruction number 2, offered by the plaintiff and given by the court over the objections of defendants, instructs the jury that if the plaintiff was requested by the defendant Lewis to assist in loading the wire, then he was an employee of the defendants. It ignored other elements, especially the most important element, that of direction and control by Lewis in the conduct of his work. This was reversible error because the jury was not properly instructed on the law pertaining to this matter.

Instruction number 3, offered by the plaintiff and given by the court over the objection of defendants, tells the jury that if the plaintiff was requested to assist in the loading of the wire, then the defendants owed him the duty to furnish him a reasonably safe place in which to work and the duty to furnish him reasonably safe appliances, tools and equipment with which to work. This was also error. If he was not an employee, the defendants did not owe him the duty to furnish him with a reasonably safe place in which to work or to furnish him with reasonably safe appliances, tools and equipment with which to perform the work. They owed him only

the duty of using ordinary care to avoid any injury to him, because we have held under the facts in this case that his status was that of an invitee. Then too, under the facts in the instant case, if the plaintiff was an employee of the defendants the defense of assumption of risk would be available to them, and the jury not only should have been properly instructed as to elements constituting master and servant or employer and employee relationship, but should also have been instructed with regard to the defense of assumption or risk, which defense it would appear is applicable to this case. This matter is discussed in 12 Michie's Jurisprudence, Master and Servant, §57, in the following language: "When an employee is not placed by his employer in a position of undisclosed danger, but is a mature man, doing the ordinary work which he has been engaged to do and the risks of which are obvious to any one, he assumes the risk of the employment, and no negligence can be imputed to the employer for an accident to him therefrom. In the relation between master and servant, the principle of waiver has wide scope and operation. In the abstract, the master is under an absolute duty to furnish the servant a reasonably safe place in which to work and reasonably safe appliances with which to work, but the servant, having knowledge of the failure in these respects, is deemed to have waived performance or rather to have assented to the conditions the master has made.

"Contributory negligence is a breach of duty imposed by law upon the servant, however unwilling and protesting he may be, while assumption of risk is not a duty, but a matter of contract and is purely voluntary on the part of the servant. The difference between assumed risk, actual or imputed, and contributory negligence arising from matters ex delicto and consisting of wrongdoing, has been aptly expressed as 'using a known defective appliance carefully, and using a good appliance carelessly'."

In dealing with this matter, this Court in the case of *Matthews* v. *Gas. Co.*, 138 W. Va. 639, 656, 657, 77 S. E.

2d 180, held: "Contributory negligence and asssumption of risk are not identical. 'The essence of contributory negligence is carelessness; of assumption of risk, venturousness.' *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364; *Hunn* v. *Windsor Hotel Company*, 119 W. Va. 215, 193 S. E. 57. Contributory negligence rests in tort; assumption of risk rests in contract or in the principle expressed by the maxim 'volenti non fit injuria' which translated is that 'he who consents can not receive an injury.' *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364; 38 Am. Jur., Negligence, Sections 171, 172; 65 C.J.S., Negligence, Section 174; Black's Law Dictionary, 4th Edition, page 1746. Contributory negligence implies the failure to exercise due care; assumption of risk involves a choice made more or less deliberately and negatives liability even though the plaintiff may have acted with due care. The doctrine of assumption of risk is not limited to the relation of master and servant or to other contractural relations with respect to situations in which a person voluntarily assumes what is sometimes characterized as an incurred risk incident to a known and appreciated danger. *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364; 38 Am Jur., Negligence, Section 172.

"The doctrine of assumed or incurred risk is based upon the existence of a factual situation in which the act of the defendant alone creates the danger and causes the injury, and the plaintiff voluntarily exposes himself to the danger with full knowledge and appreciation of its existence. 65 C.J.S., Negligence, Section 174; 62 C. J. 1102; *Gill* v. *Arthur*, 69 Ohio App. 386, 43 N. E. 2d 894; *Masters* v. *New York Central Railroad Company*, 147 Ohio St. 293, 70 N. E. 2d 898, certiorari denied 331 U. S. 836, 67 S. Ct. 1519, 91 L. Ed. 1848, rehearsing denied 332 U. S. 786, 68 S. Ct. 33, 92 L. Ed. 369; *Ringling Bros. Barnum & Bailey Combined Shows, Inc.* v. *Olvera*, 9th Cir., 119 F. 2d 584; *Standard Oil Company* v. *Titus*, 187 Ky. 560, 219 S. W. 1077; *Cincinnati, New Orleans and Texas Pacific Railway Company* v. *Goldston*, 156 Ky. 410, 161 S. W. 246; *Fitzgerald* v. *Connecticut River*

*Paper Company,* 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537. The doctrine has been stated in these words: 'A person, who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposures.' Point 4, syllabus, *Masters* v. *New York Central Railroad Company,* 147 Ohio St. 293, 70 N. E. 2d 898, certiorari denied 331 U. S. 836, 67 S. Ct. 1519, 91 L. Ed. 1848, rehearing denied 332 U. S. 786, 68 S. Ct. 33, 92 L. Ed. 369."

The only ground relied on by the trial court for setting aside the verdict of the jury and awarding to the defendants a new trial was the giving of instruction number 3, offered by the plaintiff over the objection of defendants, which the trial court was of opinion constituted reversible error because it was a binding instruction and did not negative contributory negligence. We have indicated that this instruction was erroneous, but not for the reason given by the trial court. This instruction contains the following language: "The Court instructs the jury that if you believe from a preponderance of the evidence in this case that prior to the happening of the accident that Robert Lewis, acting as superintendent of the Alaska Coal Company and Fire Creek Fuel Company, requested the plaintiff, Jess Davis, to assist in the loading of the spool of wire onto the truck, then, and in that event, the defendants, Robert Lewis, Fire Creek Coal Company and Alaska Coal Company owed to the plaintiff, Jess Davis, a duty to furnish him a reasonably safe place in which to work, and owed him a duty to furnish him reasonably safe appliances, tools and equipment with which to perform the work. And if you further find from a preponderance of the evidence in this case that without fault on his part, Jess Davis was injured through the proximate failure of the defendants, Robert Lewis, Fire Creek Coal Company, and Alaska Coal Company, to provide a safe place in which to work, and/or to pro-

vide safe appliances, tools or equipment with which to perform the job, then your verdict in this case *may* be in favor of the plaintiff, Jess Davis, in the amount not to exceed the sum sued for." [emphasis supplied] It will be observed that after reciting certain facts dealing with the theory of the plaintiff, it further states that if the jury finds from a preponderance of the evidence that the plaintiff was without fault, it "may" find in favor of the plaintiff. It has been held by this Court that such an instruction in which the word "may" is used is not a binding instruction, that the word "may" makes it permissive. It was so held in the case of *Walker* v. *Robertson*, 141 W. Va. 563, 91 S. E. 2d 468. In that case an instruction was offered which did not contain sufficient facts to make it complete within itself and concluded by telling the jury that it must return a verdict for the defendant. The trial court amended the instruction by striking the word "must" and substituting the word "may". The instruction as originally offered was a binding instruction, but after it had been amended by substituting the word "may" for "must", it became a permissive instruction. It was held that there was no error in the giving of the instruction as amended. In the instant case there were other instructions properly dealing with contributory negligence which were given to the jury. See *Connolly* v. *Bollinger*, 67 W. Va. 30, 67 S. E. 71; *Curfman* v. *West Penn*, 113 W. Va. 85, 166 S. E. 848. Therefore, the giving of instruction number 3, offered by the plaintiff, was not error for the reason given by the trial court and the verdict should not have been set aside on this ground.

It is contended by the defendants, Fire Creek Fuel Company, Alaska Coal Company and Robert Lewis that it was error for the trial court to refuse instructions number 14, 15 and C, offered by the defendants. These instructions are based on the theory that the plaintiff was a mere trespasser, but under the facts in this case, we are of the opinion, as heretofore stated, that the plaintiff was an invitee at the time the injuries were re-

ceived; that these instructions were not applicable under the facts of this case and were properly refused by the court.

The second writ of error was obtained by the defendants, Fire Creek Fuel Company, Alaska Coal Company and Robert L. Lewis, on the ground that it was error for the trial court to direct a verdict in favor of the F. & L. Coal Company. It is contended by the F. & L. Coal Company that this matter was waived by the defendants, Fire Creek Fuel Company, Alaska Coal Company and Robert Lewis, in that they did not object and except to such ruling at the time it was made, although a transcript of the record shows an exception was taken at the time. It is questioned here because of the court reporter's statement that his notes did not indicate same having been done and it was a practice to note an automatic exception in the record. If there was any question involving a clerical error or error in fact, such matter should be disposed of by proper motion in the trial court. See Code 58-2-3 and 21 C.J.S., Courts, §232. The record indicates, by an order entered by the trial court August 19, 1957, that the defendants Fire Creek Fuel Company, Alaska Coal Company and Robert Lewis, and each of them, objected and excepted to the directing of the verdict in favor of the F. & L. Coal Company. It further shows, by order of the trial court entered January 22, 1958, that it objected and excepted to the judgment in favor of the F. & L. Coal Company. There is no conflict in the record with regard to this matter, and a court of record speaks only through its record. 5 Michie's Jurisprudence, Courts, §23; *Powers* v. *Trent,* 129 W. Va. 427, 40 S. E. 2d 837; *State* v. *Underwood,* 130 W. Va. 166, 43 S. E. 2d 61; 14 Am. Jur., Courts, §137. It is to be noted that the defendants, Fire Creek Fuel Company, Alaska Coal Company and Robert Lewis, do not claim that the ruling of the trial court directing a verdict in favor of the F. & L. Coal Company is error in itself, because they agreed with the ruling of the trial court that there was no negligence proved on the part of

the F. & L. Coal Company, but they claim and contend it was error for the court to direct a verdict in favor of the F. & L. Coal Company on the ground that it was not negligent and not to direct a verdict in their favor because they were not guilty of negligence. It would appear from the facts in this case that there was no negligence proved on the part of the F. & L. Coal Company. The only thing done by this Company was to back its truck to the entrance of the supply house of the Fire Creek Fuel Company. This action alone would not constitute negligence, and, in any event, could not be held to be the proximate cause of the injuries received by the plaintiff. *Matthews* v. *Gas Co., supra; Jones* v. *Smithson,* 119 W. Va. 389, 193 S. E. 802; Michie's Jurisprudence, Negligence, §21.

For the reasons stated herein, the judgment of the Circuit Court of Fayette County entered on January 8, 1958, setting aside the verdict of the jury and granting to the defendants, Fire Creek Fuel Company, Alaska Coal Company and Robert Lewis, a new trial, is affirmed; the judgment of the Circuit Court of Fayette County entered on January 22, 1958, on a directed verdict in favor of the F. & L. Coal Company and dismissing it as a party defendant to this action, is affirmed.

*Affirmed.*