PEOPLES SUPPLY, INC., a corporation; American Central Insurance Company, a corporation; Camden Fire Insurance Association, a corporation; Fidelity-Phenix Fire Insurance Company, a corporation; Insurance Company of North America, a corporation; and The Millers Mutual Fire Insurance Company, a corporation, Appellants,

v.

VOGEL-RITT OF PENN-MAR-VA., INC., a corporation, Appellee.

No. 7949.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 4, 1959.

Decided Jan. 4, 1960.

Clarence E. Martin, Jr., Martinsburg, W. Va. (James M. Mason, III, Charles Town, W. Va., on brief), for appellants.

J. Sloan Kuykendall and Thomas V. Monahan, Winchester, Va. (Decatur H. Rodgers, Jr., Rice, Hannis & Rodgers, Martinsburg, W. Va., and Henry H. Whiting, Winchester, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

On May 17, 1957, at approximately 8:30 A. M., a flour mill of the Peoples

Supply, Inc., Charles Town, West Virginia, was destroyed by fire. The catastrophe was apparently caused by negligently placing a bucket of petroleum jelly called "protopet" on an electric heater to soften it for use in sealing the windows of the mill building so that it might be fumigated with methane, a deadly gas, for the extermination of pests. The damages from the fire, amounting to $225,000, were paid in part by the appellant insurance companies and this suit was brought by the owner and the insurance companies as subrogees of the owner against Vogel-Ritt of Penn-Mar-Va., Inc., the exterminator company, which had charge of the fumigation of the building. The suit was defended on the grounds (1) that there was not sufficient evidence to show that the fire was caused by ignition of the protopet; and (2) that the placing of the protopet on the heater was the act of an employee of Peoples Supply and not an act of an employee of Vogel-Ritt, and that, under the circumstances to be related below, the employee of the mill did not become an employee of the exterminator company under the loaned servant doctrine. The District Judge, before whom the case was tried without a jury, found for the defendant on the second ground and did not find it necessary to pass on the first.

The evidence may be summarized as follows. The work of fumigating the mill was undertaken by Vogel-Ritt under a written contract of April 23, 1957. By an arrangement between the parties Peoples Supply loaned two of its employees, Clarence W. Robinson and James N. Whittington, to assist Vogel-Ritt in the work of fumigation. On the morning in question Vogel-Ritt sent two of its employees to the mill to perform the operation, namely, Paul F. May, its service supervisor, who was in charge, and one Charles V. Cromer. Their purpose was to prepare the flour mill building for fumigation on the following day. No work was being done in the flour mill that day and there was no fire on the premises, but certain grinding operations were being performed in an adjoining building.

The preparatory work consisted of sealing the windows, door and other outlets in order to prevent the escape of the deadly methane fumes. This was to be done by spreading the protopet on strips of newspaper and placing the strips around the apertures. Robinson and Whittington were assigned by the mill to help in this process and joined the Vogel-Ritt men in the work of preparation on the second floor of the mill.

The protopet was contained in an eight or ten quart bucket about two-thirds full. The Vogel-Ritt employees said that it was cold and stiff and should be heated, whereupon Robinson took the bucket to a small room 4 feet by 8 feet in dimension, called the bleaching room, which adjoined the corner of the large room in which the men were assembled. He placed the bucket upon an electric space heater and turned the heater switch to "High". The heater was 27 inches long, 6 inches wide and 13 inches in height. It contained heating elements consisting of one inch strips running lengthwise of the heater and enclosed in a metal housing, the top and sides of which were of open construction. The surface temperature of the heater strips, according to defendant's testimony, is in excess of 560 degree F. and above the fire point of protopet, but the heater does not produce sufficient temperature at the surface of the housing to ignite protopet. At the time the bucket was placed upon the heater there was an accumulation or coating of protopet on its outside surface from prior usage.

After depositing the bucket on the heater Robinson returned to the large room where Cromer and Whittington were preparing the paper strips and told Cromer what he had done. Robinson then ascended to the third floor and joined May in putting paper strips, which had already been coated, around the windows. Cromer remained on the second floor with Whittington but before proceeding with the work of preparing the paper strips he went to the bleaching room to check what Robinson had done and saw the bucket of protopet on the

lighted heater. He then closed the door of the small room and returned to his work with Whittington. After five or ten minutes the two men noticed smoke in the corner of the room adjacent to the bleaching room. They went to the door, opened it, and found the room in flames. According to Whittington's testimony the protopet on the heater was in flames and there were also flames on the floor and on the walls of the room. According to Cromer the flames were confined to the corner of the room opposite the door beyond the heater but they had spread from the floor to the ceiling. Immediate steps were taken to extinguish the fire but they were unsuccessful and the building was a complete loss.

Although no other explanation of the fire has been offered the defendant strongly contends that it was not caused by the heating of the protopet in the confined space of the bleaching room. The District Judge in making his decision assumed that the heating of the protopet was the cause of the fire but, nevertheless, reached a verdict in favor of the defendant on the ground that the protopet was placed on the heater by Robinson and that Robinson at the time was the employee of the milling company and therefore the exterminating company had no responsibility for his act. The facts bearing on this situation may be summarized as follows. The fumigation of the building was a specialized job, in the hands of Vogel-Ritt and under the supervision of May, its employee. By previous arrangement Robinson and Whittington, the employees of the milling company, were instructed by their employer to assist Vogel-Ritt in the sealing operation. They had rendered similar assistance in previous fumigations of the plant but on those occasions protopet was not heated. During the course of the work on the day of the fire they subjected themselves to the direction and control of the Vogel-Ritt men and did as they were told. On former occasions the milling company had felt free to call back their loaned employees, if needed, to perform regular duties in the mill, but there is no evidence that on these occasions the milling company had directed or controlled their employees in the work of assisting Vogel-Ritt. Nor did the milling company exercise any control of their employees in the performance of the work on this occasion.

Despite these established facts other circumstances were thought to have conclusive weight in deciding the point in favor of the defendant. Robinson and Whittington were employed and paid by the milling company and were subject to discharge only by it. The fumigating job was being done for the mutual benefit of the parties to the contract and the cost to the milling company was reduced by the share of the work done by its employees. From these circumstances the conclusion was reached that Vogel-Ritt had no right to give commands to the milling company men but could only point out what was to be done and how to accomplish it, and hence the final decision was that the loaned employees remained the employees of the milling company and did not become the employees of Vogel-Ritt in the performance of its exterminator contract.

As the Supreme Court of West Virginia has pointed out in a number of cases, difficulties frequently are encountered in determining whose employee a certain person was in the doing of a certain act where more than one possible employer is involved. The question of pay is not conclusive. Neither is the power to employ and discharge the particular employee a conclusive test. Nor is it necessarily conclusive to determine for whose benefit the act was performed. The ultimate test is which employer had the right to control and direct the conduct of the employee in the performance of the act in question. Craft v. Pocahantas Corp., 118 W.Va. 380, 190 S.E. 687; American Tel. & Tel. Co. v. Ohio Valley Sand Co., 131 W.Va. 736, 50 S.E.2d 884; Davis v. Fire Creek Fuel Co., W.Va., 109 S.E.2d 144.

In the pending case there was no specific agreement as to which of the

parties to the fumigation contract should direct the work of the employees of the mill, who were assigned by the milling company to assist in the performance of the work, and the question must be answered by considering the inferences to be drawn from the nature of the work and the manner in which it was actually performed. The fumigation of the mill lay outside its ordinary business of manufacturing flour and peculiarly within the competence of Vogel-Ritt, who held itself out as competent to rid the property of pests; and it is manifest that Vogel-Ritt was called in to do a kind of work for which the employees of the mill were not qualified. The property was turned over to Vogel-Ritt for the day and the ordinary work of the mill was suspended. The employees of the mill assigned to assist in the operation did not attempt to direct the manner of its performance but the employees of Vogel-Ritt assumed entire control. They made the determination that the protopet, with which the employees of the mill were unfamiliar, must be heated and, in obedience to their direction, Robinson took the substance to the electric heater in the bleaching room, electricity being the one available source of heat at this time; and Cromer, the employee of Vogel-Ritt, inspected and adopted the arrangement as a proper means of softening the mixture for convenient use. In our judgment, these circumstances must be accepted as clear proof that the borrowed workmen were placed under the control of the exterminating company and subjected to the direction of its employees. There is in fact no evidence that the milling company, at any time, sought to take the work out of the hands of the expert independent contractor whom it had employed or to interfere in any way with the performance of the work. The fair inference supported by this proof is that Robinson and Whittington were expected to obey the direction of Vogel-Ritt, as they in fact did, and that, for the purposes of this case, they must be treated as the employees of that company.

We do not, however, undertake to decide whether the fire was caused by overheating the protopet in the bleaching room. That there was evidence tending to support such a finding is manifest; but the defendant caused certain tests to be made upon which it bases the contention that the fire could not have been caused in this way. It is admitted that there was a film of protopet on the exterior of the bucket and that the heat generated by the heater bars inside the heater is sufficient to ignite protopet upon contact. But, on the other hand, it is said that the tests showed that the heater was incapable of igniting the protopet inside the container or causing it to boil and overflow and that the protopet on the outside of the bucket was insufficient in quantity to melt and fall upon the heater bars and cause the fire. Since this defense was not considered by the District Court, the case will be remanded for a determination of the facts.

Reversed and remanded.