SAMUEL L. NESBITT

*v.*

EDWARD J. FLACCUS, *et al.*

(No. 12307)

Submitted September 8, 1964.  Decided November 17, 1964.

*Beneke & Callahan, Louis J. John,* for appellant.

*McCamic & Tinker, Jeremy C. McCamic,* for appellees.

CAPLAN, JUDGE:

This is an action instituted by the plaintiff, Samuel L. Nesbitt, wherein he seeks to recover from the defendants, Edward J. Flaccus, George E. Thieroff and Arthur C. Stifel, Jr., a certain sum of money which he alleges is owing to him as his commission on the sale of certain property owned and

sold by the defendants. Upon the trial of this case the jury returned a verdict in favor of the plaintiff. On this appeal this Court is requested to reverse the judgment entered thereon and to grant the defendants a new trial.

An examination of the record reveals the following facts. On February 12, 1958, the defendants purchased from Indian Head Mills Corporation certain real estate in North Wheeling, known as the L. J. Stifel Company property. This property consisted of two separate structures designated as Buildings A and B. Prior to this sale to the defendants, a Mr. Exley, President of the Ohio Valley Drug Company, considered the purchase of this property and was shown through it by an agent of the then owner. Although Mr. Exley did not purchase the property at that time, he expressed an interest in it to Mr. Flaccus after Mr. Flaccus and his associates acquired the property. Mr. Flaccus did not thereafter contact Mr. Exley in relation thereto.

On May 4, 1959, the defendants entered into an agreement with a real estate broker in Wheeling, whereby the broker was granted the exclusive right to sell or rent this property. This exclusive right terminated on January 1, 1960, it being apparent from the record that the broker did not succeed in his endeavor.

In late March or early April, 1960, Mr. Nesbitt, the plaintiff, contacted Mr. Thieroff and inquired if Building B of the subject property was for sale and whether or not there was an exclusive listing therefor with any real estate broker. Mr. Thieroff replied that the property was for sale and that the plaintiff could sell it if he and the other owners received the net sum of $200,000.00 from such sale. He further told the plaintiff that any commission received from the sale would have to be from an amount over and above the $200,-000.00. Mr. Nesbitt informed Mr. Thieroff at that time that he had a prospect for the purchase of Building B, although he did not reveal the identity of such prospect.

Having this authority to sell the property, the plaintiff approached Mr. Exley, of the Ohio Valley Drug Company. He showed Mr. Exley through the premises and pointed out

various items therein which he considered as assets. Mr. Exley was informed by the plaintiff that he could purchase Building B separate and apart from the other building. This was the first time Mr. Exley knew that Building B was available as a separate purchase, and he testified, "That had some effect on my interest, because I wasn't interested in the whole property." When the plaintiff quoted the price of the building at $210,000.00, Mr. Exley indicated that the price was too high but that he would have to discuss the matter with his board of directors.

Approximately ten days after he was shown through the subject property, Mr. Exley informed the plaintiff that his company had decided to exercise its option on another property and that it was no longer interested in Building B. That was the end of the discussion, concerning this property, between Mr. Exley and Mr. Nesbitt.

It is revealed by the record that the Ohio Valley Drug Company did not exercise its option to purchase the other property and again exhibited an interest in the Stifel building. Thereafter, Mr. Exley approached Mr. Flaccus for the purpose of negotiating for the purchase of the subject property. He indicated his interest in acquiring this building if the defendants would purchase the building then occupied by the Ohio Valley Drug Company.

Following lengthy negotiations, the parties, Ohio Valley Drug Company and the defendants, entered into a purchase agreement. In January, 1961, the defendants executed and delivered a deed conveying Building B of the Stifel property to the Ohio Valley Drug Company. Mr. Nesbitt was not consulted during this time, nor did he participate in the negotiations or the closing of the sale. The consideration received by the defendants for this property was the sum of $168,000.00.

Upon the refusal of the defendants to pay the plaintiff a commission on the foregoing sale, the plaintiff instituted this action. In his complaint the plaintiff alleges that it was through his "Agency and work" that the defendants sold the subject real estate to the Ohio Valley Drug Company and

that he was therefore entitled to a commission in the amount of $7,040.00. Upon the trial of this case the jury returned a verdict for the plaintiff in the sum of $6,500.00.

In their petition for appeal the defendants list numerous assignments of error. The principal assignments relied on for reversal are: (1) The court erred in allowing the plaintiff to maintain this action for broker's commission, the plaintiff not being a licensed real estate broker in the City of Wheeling, as required by the city ordinance; (2) the verdict is contrary to the law and evidence and it is not supported by the evidence; (3) the court erred in refusing to give on behalf of the defendants a peremptory instruction; (4) the court erred in overruling defendants' motion for summary judgment; (5) the court erred in giving certain of plaintiff's instructions and in refusing certain instructions offered by the defendants; (6) the court erred in refusing defendants' motion for a continuance; (7) the court erred in allowing plaintiff to recover on a quantum meriut count; and (8), the court erred in allowing the verdict to stand as not being excessive in view of the amount of services performed by the plaintiff.

The defendants contend that the plaintiff is precluded from maintaining this action by reason of his failure to obtain a city license to operate as a real estate broker as required by certain city ordinances. It would be necessary, in order to pass upon that question, to examine the pertinent municipal ordinances and to determine their character. However, an examination of the record reveals that such ordinances were not made a part thereof. They are in no manner before this Court.

It is a well recognized rule of law that, although a court may take judicial notice of a municipal charter, it will not judicially take notice of ordinances of a municipal corporation. 7 M.J., Evidence, Section 5. As stated in 20 Am. Jur., Evidence, Section 38, "As a general rule, upon a review of a municipal court judgment involving only questions of law, the reviewing court may not take judicial notice of an ordinance, even though the municipal court was entitled to do so. Accordingly, failure to include an ordinance in the rec-

ords or in a bill of exceptions precludes its consideration by the reviewing court."

Inasmuch as the ordinances to which the defendants refer are not before us, we can not determine the question here presented. For this reason this assignment of error must fail.

The defendants assign as error on this appeal the refusal of the trial court to give certain instructions offered by them. The instructions offered and so refused are numbered 2, 4, 5, 6, 7 and 8. Our examination of the record reveals that Instruction No. 2 was given as amended, the only objection made thereto being that a certain portion was deleted. The deleted portion was not preserved as a part of the record and the objection will not now be considered.

In relation to Instructions Nos. 4, 7 and 8, offered by the defendants, no objection was noted when they were refused by the court. It is clearly stated in Rule 51, West Virginia Rules of Civil Procedure, that no party may assign as error the giving or refusal to give an instruction unless he objects thereto before the arguments to the jury are begun. Inasmuch as no objection was noted by the defendants to the court's refusal of the above instructions and in view of the foregoing rule, the assignment of error pertaining to the refusal of such instructions will not be considered on this appeal.

Instruction No. 5, offered by the defendants, was refused by the court and an exception to the court's ruling was noted by the defendants. This instruction told the jury that "if you should believe by a preponderance of the evidence that in the conversation between Mr. Thieroff and the plaintiff the terms of the sale were specifically fixed in advance by Mr. Thieroff, and if you should further find by the preponderance of the evidence that the defendants in good faith negotiated with Mr. Exley in the final sale of the property on different terms, than them specifically fixed by Mr. Thieroff and the plaintiff, then your verdict should be against the plaintiff and in favor of the defendants."

This is a binding instruction which ignores vital issues in the case and was correctly refused by the trial court. Here the consideration of the jury was confined to the contract between the plaintiff and the defendants, thereby wholly ignoring the theory of recovery on a quantum meruit basis. A binding instruction is vitiated by the failure to include all of the elements which the jury should have considered in finding a verdict for the defendant. *Rockingham Poultry Marketing Cooperative, Inc.* v. *The Baltimore and Ohio Railroad Company*, 145 W. Va. 787, 117 S. E. 2d 504. Such binding instruction must be broad enough to present all material phases of the issues to which they relate and must submit conflicting theories. *McWhorter* v. *City of Clarksburg*, 111 W. Va. 9, 161 S. E. 577; *Shires* v. *Boggess*, 72 W. Va. 109, 77 S. E. 542. See also *Moore* v. *Turner*, 137 W. Va. 299, 71 S. E. 2d 342, 32 A.L.R. 2d 713; *Curry* v. *New Castle Auto Express*, 112 W. Va. 268, 164 S. E. 147; *Stafford* v. *Chesapeake and Ohio Railway Company*, 111 W. Va. 249, 161 S. E. 447; *Shaver* v. *Consolidation Coal Company*, 108 W. Va. 365, 151 S. E. 326; *Parkersburg & Marietta Sand Company* v. *Smith*, 76 W. Va. 246, 85 S. E. 516.

The plaintiff in this case alleged his right to recovery on the basis of quantum meruit. This was not in any manner denied in the answer of the defendants. In fact, by their offered Instruction No. 11, which was given, the defendants readily acknowledged that recovery could be based on quantum meruit. Thus, this theory of the case, if supported by appreciable evidence, should have been included in any binding instruction offered on behalf of the defendants. The failure to do so makes such instruction erroneous and it was properly refused. *Myers* v. *Cook*, 87 W. Va. 265, 104 S. E. 593; 10 M.J., Instructions, Section 7.

Instruction No. 6, offered by the defendants, is peremptory in nature, calling for a directed verdict for the defendants. In the circumstances of this case it was properly refused by the trial court.

Instructions Nos. 7 and 9 were offered by the plaintiff and were given by the court. The only exceptions noted to the granting of these instructions were stated to be on the same

grounds as assigned on Instruction No. 3. Our examination has revealed that neither Instruction No. 3 nor any objection thereto has been preserved as a part of this record. Therefore, this assignment of error will not now be considered.

The defendants objected to the giving of Instructions Nos. 10 and 12, offered by the plaintiff, but failed to state any grounds for their objections. It is provided in Rule 51, West Virginia Rules of Civil Procedure, that before one may assign as error the giving of any instruction he must, in addition to objecting thereto prior to the jury arguments, state distinctly, as to any given instruction, the matter to which he objects and the grounds for his objection. Since the defendants did not comply with this rule, this assignment will not be considered on this appeal.

Instruction No. 5, offered by the plaintiff and given by the court, informed the jury of the contract between the Ohio Valley Drug Company and the defendants for the sale and purchase of Building B and further told the jury that the sale was consummated for a consideration of $168,000.00. The instruction further continued, "and if you find from a preponderance of the evidence in this case that the plaintiff herein, Samuel L. Nesbitt, was the effective cause of bringing Seller and Buyer together in this sale and purchase, then your verdict in this case may be for the plaintiff, Samuel L. Nesbitt."

The defendants objected to the giving of this instruction on the grounds that (1) it was an incomplete binding instruction; (2) it does not correctly state the law in that the purchase price on its face is shown to be lower than the stated price given by defendant Thieroff to plaintiff Nesbitt; and (3) it fails to show that the plaintiff was the efficient cause of subsequent negotiations.

This is not a binding instruction but rather is permissive in nature. The use of the word "may" brings it within the latter category. *Graham* v. *Wriston,* 146 W. Va. 484, 120 S. E. 2d 713; *Davis* v. *Fire Creek Fuel Company,* 144 W. Va. 537, 109 S. E. 2d 144. Since Instruction No. 5 is not binding, all of the instructions given should be read together to

determine if the jury was properly informed as to the law. *Lawrence* v. *Nelson,* 145 W. Va. 134, 113 S. E. 2d 241; *Curfman* v. *Monongahela West Penn Public Service Company,* 113 W. Va. 85, 166 S. E. 848; *Davis* v. *Fire Creek Fuel Company,* 144 W. Va. 537, 109 S. E. 2d 144; 10 M.J., Instructions, Section 42. A reading of this instruction together with other given instructions, particularly Nos. 2 and 3, offered by the defendants, clearly shows that the jury was fully informed as to what constitutes effective or procuring cause and that such cause must be proved by a preponderance of the evidence before it could find for the plaintiff.

An examination of other instructions given by the trial court shows that the jury was sufficiently apprised of the law relating to the plaintiff's role as the efficient cause of subsequent negotiations between Mr. Exley and the defendants. Furthermore, an instruction was given under which the jury could return a verdict for the plaintiff if it found from a preponderance of the evidence that the plaintiff was the effective cause of finding the Ohio Valley Drug Company as a purchaser, "regardless of the fact that the price paid by the Ohio Valley Drug Company was less than $200,-000.00." We perceive no error in Instruction No. 5 as given.

The objection to Instruction No. 8, offered by the plaintiff and given by the court, raises the question as to whether the manner in which the defendants dealt with this property constituted a joint adventure. The jury was instructed that the defendants were joint adventurers in this enterprise and that the act of one in relation thereto was binding upon all of them, and that if it believed from a preponderance of the evidence that any of the defendants authorized the plaintiff to sell all or any part of the subject premises, and that the plaintiff was the procuring cause which resulted in the sale thereof, then such authorization and subsequent act of the plaintiff was binding on all the defendants and they were jointly and severally liable to the plaintiff for commissions in the amount as disclosed by the evidence.

A joint adventure generally has been defined as an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their

property, money, effects, skill and knowledge. Black's Law Dictionary, Fourth Edition; 30 Am. Jur., Joint Adventures, Section 2. Joint adventure is similar to a partnership, the principal distinction being that a partnership relates to a general business of a certain type while joint adventure relates to a single business transaction. *Gelwicks* v. *Homan*, 124 W. Va. 572, 20 S. E. 2d 666. There must be a contract, written or verbal, whereby the parties agree to contribute to the enterprise and to share in the profits therefrom. *Pownall* v. *Cearfoss*, 129 W. Va. 487, 40 S. E. 2d 886.

In the instant case there is no evidence of a written contract between the defendants to enter into a joint adventure. However, it is clear from the testimony of Mr. Thieroff that a joint adventure did in fact exist. In relation to the agreement between the defendants, Mr. Thieroff testified as follows: "Q. Did you agree amongst yourselves to contribute equally to the purchase? A. That is right; we did. Q. Did you agree amongst yourselves to take equally from any profits? A. We did. Q. Did you arrange amongst yourselves to share equally any losses. A. We did. Q. Did you in fact contribute equally to the purchase? A. Yes. Q. Did you in fact extract equally the profits? A. Yes." In addition, it is obvious from all of the evidence that these defendants entered into this enterprise as a single business transaction, the prime purpose being to purchase and sell the subject real estate, realizing a profit therefrom.

In view of the foregoing, we are of the opinion that there is ample evidence that the defendants were engaged in a joint adventure, and that there was evidence sufficient for jury consideration that the act of Mr. Thieroff was binding upon the other defendants. We further believe that there was ample evidence which would permit the jury to find that the plaintiff was authorized to sell this property for the defendants.

Whether the plaintiff was the procuring cause which resulted in the sale is a question of fact for the jury. There is evidence in the record which reveals that the plaintiff was authorized to obtain a purchaser for the subject property; that he did in fact show it to a prospective purchaser; that

he informed such prospective purchaser that he could acquire Building B separate and apart from the other building; and that the interest of the ultimate buyer was renewed by the plaintiff's acts and information. The matters set out in Instruction No. 8, offered by the plaintiff, were adequately supported by the evidence. The objection to the giving of such instruction, therefore, is without merit.

The defendants here assert that the verdict of the jury was contrary to the law and evidence and was not supported by the evidence. In our full consideration of the assignments of error relating to the instructions we have determined that the jury was properly informed as to the law. So far as the evidence is concerned, the proposition that the jury is the sole judge and trier of the facts is so well established that a citation of authorities is unnecessary. We need only to determine here whether the verdict was supported by the evidence.

The plaintiff alleged in his complaint that he was authorized by the defendants to sell the subject property and that it was through his agency and work that such real estate ultimately was sold. The testimony adduced at the trial of this case readily supports the allegation that the plaintiff had been authorized by the defendants to sell Building B, the property involved here. The record discloses that Mr. Nesbitt did show Mr. Exley, of the Ohio Valley Drug Company, through the premises; that he pointed out many of the assets of the building; that he was the first person to inform Mr. Exley that Building B could be purchased separate and apart from the remainder of the Stifel property; and that Mr. Exley's interest, upon receiving that information, was definitely renewed. It is undisputed that the Ohio Valley Drug Company was the ultimate purchaser of this property.

Although the defendants do not materially dispute these allegations, they nonetheless say that the plaintiff's acts were not the procuring cause of the sale. Whether or not the plaintiff's efforts were the procuring cause of the sale is a question of fact for the jury. *Averill* v. *Hart & O'Farrell*, 101 W. Va. 411, 132 S. E. 870. Since the evidence was conflicting as to whether the plaintiff was the effective or pro-

curing cause of the sale, a question of fact was presented which was properly submitted to the jury.

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts which the jury might properly find under the evidence must be assumed as true. *Walker* v. *Monongahela Power Co.,* 147 W. Va. 825, 131 S. E. 2d 736; *Bower* v. *Brannon,* 141 W. Va. 435, 90 S. E. 2d 342; *Butcher* v. *Stull,* 140 W. Va. 31, 8 S. E. 2d 278. See also *Lambert* v. *Goodman,* 147 W. Va. 513, 129 S. E. 2d 138; *Campbell* v. *Campbell,* 146 W. Va. 1002, 124 S. E. 2d 345; *Graham* v. *Crist,* 146 W. Va. 156, 118 S. E. 2d 640; *Overton* v. *Fields,* 145 W. Va. 797, 117 S. E. 2d 598; *Browder* v. *County Court of Webster County,* 145 W. Va. 696, 116 S. E. 2d 867. There being evidence in the record upon which the jury could base its verdict, we conclude that there is no merit in this assignment of error.

Still another assignment of error relied upon by the defendants is the court's action in allowing the plaintiff to recover on a quantum meruit count. The defendants take the position on this appeal that the plaintiff's recovery must be based on a specific contract. The evidence in relation to the plaintiff's part in bringing about this sale has been discussed herein. We have concluded that there is sufficient evidence to support the verdict of the jury.

In this case the defendants authorized the plaintiff to acquire a purchaser for this property. This authorization was unlimited as to time. The plaintiff expended his efforts by showing a prospective purchaser through the property. This same prospective purchaser ultimately acquired the property from the owners at a price less than that specified to the plaintiff. This fact in itself does not preclude the plaintiff from being entitled to his commission on the sale.

It is succinctly stated in 3 M.J., Brokers, Section 31, that "where an agent contracts to furnish a purchaser for land at a stipulated price, and such agent does furnish a purchaser whom the owner accepts, and, in the negotiation of

the transaction, the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, still such an agent is entitled to his commission, or to such compensation for his services as is reasonable, fair, and just, under all the facts and circumstances." See also *Wallace* v. *Prichard,* 92 W. Va. 352, 115 S. E. 415, and *Ice* v. *Maxwell,* 61 W. Va. 9, 55 S. E. 899. The question as to whether the plaintiff furnished a purchaser was settled by the jury. In the circumstances of this case and in view of the above authorities, we think that it was proper to allow the jury to decide what, if any, compensation the plaintiff is entitled to recover. To hold otherwise would open the door to the possibility of widespread fraud.

Another reason compels us to find that the trial court did not commit error in allowing recovery on a quantum meruit basis. Both the plaintiff and the defendants, during the trial of this case, offered instructions permitting a recovery on this basis. Such instructions were given without objection. Having invoked this theory of recovery into the case, the defendants can not now be heard to complain. It is a general rule of law that it is the duty of the jury to take the law from the court and to apply that law to the facts as it finds them from the evidence. The instructions are the law of the case. 53 Am. Jur., Trial, Sections 844 and 845.

This Court has held on numerous occasions that even if instructions were erroneously given, such error induced by both parties can not be relied upon by either in the appellate court. *Lambert* v. *Goodman, et al.,* 147 W. Va. 513, 129 S. E. 2d 138; *Dangerfield* v. *Akers,* 127 W. Va. 409, 33 S. E. 2d 140; *Foard* v. *Harwood,* 113 W. Va. 619, 169 S. E. 465. We find no error, therefore, in allowing the plaintiff to recover on the quantum meruit count.

We have examined and considered the other assignments of error noted by the defendants and are of the opinion that none of them warrants reversal of this case.

For the reasons stated herein, the judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*